**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

TYERA JANE HOLLEY-STOKES         CIVIL DIVISION

        Plaintiff,                      Civil Action No.  21-4629

TEMPLE UNIVERSITY HOSPITAL         **COMPLAINT**

                                       **JURY TRIAL DEMANDED**

        Defendant.

**COMPLAINT**

Plaintiff, Tyera Jane Holley-Stokes, by and through her undersigned counsel, The Lacy Employment Law Firm LLC, hereby files this Complaint against Defendant and states as follows:

**PROCEDURAL AND ADMINISTRATIVE REMEDIES**

1.       All the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference as if set forth herein at length.

2.       Venue is proper in the District Court under 28 U.S.C. §1391(b)(2) because the events or omissions giving rise to the claim occurred within this District.

3.       On or about April 13, 2021, Plaintiff dual-filed a charge with the Philadelphia office of the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission alleging sex, race, and disability discrimination as well as retaliation.[1] *See* EEOC Charge of Discrimination, attached as Exhibit 1.

---

[1] Plaintiff's claims under the PHRA are referenced for notice purposes. Plaintiff is required to wait one full year from the time of filing the dual-filed charge to bring claims under the PHRA. Plaintiff must

4.      The EEOC issued a Right to Sue letter ("Right to Sue") and Plaintiff timely filed the above-captioned action on or before 90 days from receipt of the Right to Sue that the EEOC issued.  *Id.*

5.      Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

## PARTIES

6.      Tyera Holley-Stokes is an African-American female who resides at 4723 B15th Street, FL2, Philadelphia, PA.

7.      Temple University Hospital ("Temple") is a public higher-education institute that also provides medical services. Upon information and belief, Temple is located at 2450 W Hunting Park Avenue, Philadelphia, PA 19189.

## FACTUAL BACKGROUND

8.      Ms. Holley-Stokes, an African-American female, worked at Temple for approximately thirteen years.   Ms. Holley-Stokes performed her duties as a Clerk in the Medical Records Appeals Department without any complaints.    As a result of her thirteen years of service with Temple and excellent performance, Ms. Holley-Stokes was promoted to the Precertification Department in July, 2020. Ms. Holley-Stokes reported to her direct supervisor, Kathleen Haviland, a white female.

9.      Ms. Haviland called Ms. Holley-Stokes "bipolar" in a meeting in December 2019. Ms. Haviland was the same manager who subjected Ms. Holley-Stokes to continued discrimination, harassment, and retaliation.    Although she did not have bipolar, she was regarded as disabled by her supervisor.

---

however file her lawsuit in advance of the same because of the date of issuance of her federal right-to-sue letter.

10.     Ms. Holley-Stokes required frequent leaves of absence during the pandemic to care for her asthmatic son, Tyree. Asthma is a serious health condition placing Tyree at high risk for COVID-19. Ms. Holley-Stokes discussed her son's health issues with her co-workers to explain her absences from work. Therefore, it was common knowledge that Ms. Holley-Stokes was out on leave to address her care for her asthmatic son.

11.     Ms. Holley-Stokes requested leaves of absences (LOA) to take care of her son. She first requested a leave of absence from April 7-June 5, 2020. Ms. Holley-Stokes' request for LOA was approved for April 7, 2020-April 13, 2020, but denied from April 14-June 5, 2020. During the LOA time frame that Temple approved, Ms. Holley-Stokes was in quarantine after exposure to a sick co-worker who tested positive for COVID-19.

12.     After returning from quarantine, Ms. Holley-Stokes again requested LOA to care for her son.   During the middle of May, 2020, Tyree's asthma began to flare-up, requiring frequent monitoring and daily administration of medication by Ms. Holley-Stokes.   Ms. Holley-Stokes again requested LOA, but management was unresponsive.

13.     Ms. Holley-Stokes requested several other accommodations.   She asked for working earlier hours, half days, and remote work. Her requests were ignored. Unlike Ms. Holley-Stokes, other employees in that department were allowed to work from home during the pandemic. Finally, Ms. Holley-Stokes applied for and received two weeks of FMLA care.

14.     After she returned to work, Ms. Holley-Stokes again requested a LOA.  Starting in August that year, she would send multiple requests to her supervisors.  They would read the requests and not respond.

15.     In July 2020, Ms. Holley-Stokes was promoted to PreCert Dept.  Yet she received backdated disciplinary actions after she persisted in requesting accommodations/LOAs. Ms.

Stokes' union representative then informed Ms. Holley-Stokes that if she had another attendance issue or lateness, she would be suspended or terminated.

16.     On September 15, 2020, Ms. Holley-Stokes received a disciplinary action notice for the months of March, April, May, June, and July for attendance.

17.     Fearing for her job, and that this was the only choice in the face of retaliation, Ms. Holley-Stokes resigned.  She felt that she had no choice given that her managers refused to accommodate her requests for reasonable accommodations, FMLA, and LOAs.  And she feared that she could not care for her children, including Tyree who had a serious health condition.  She also was told that one more disciplinary action would result in termination.  She feared that if she did not resign, should would not be able to get another job due to the termination on her record. It saddened Ms. Holley-Stokes to resign as she loved her job and had been there, without disciplinary incident, for many years.

18.     The ADA protects employees suffering from qualified disabilities. Further, it protects employees who are "regarded as" being disabled. As a predicate matter, Ms. Holley-Stokes was regarded as suffering from bipolar disorder.

19.     Ms. Holley-Stoke was further "regarded as" having a disability under the ADA. Ms.  Holley-Stokes' coworkers and superiors knew that she was absent from work due to her disability and caring for asthmatic child during the pandemic.  This was common knowledge amongst Ms. Holley-Stokes' cohort and supervisor.   Still, Temple University refused to accommodate her requests for reasonable accommodations, FMLA, and LOAs. Fearing retaliation from Ms. Haviland, Ms. Holley-Stoke resigned.

20.     The Family and Medical Leave Act (FMLA) allows qualified employees leave under certain circumstances. Ms. Holley-Stokes  communicated to Ms. Haviland her need for

remote work and/or altered hours, and eventually, a leave of absence. After Ms. Holley-Stokes requested a reasonable accommodation and/or additional leave; she was pressured to resign.

21.     Her supervisors were aware that Ms. Holley-Stokes requested unprotected LOAs. Although she requested two weeks of FMLA, her supervisors did not inform her that she could continue to take intermittent leave under the FMLA.  Had her supervisors made her aware that she could take intermittent leave; *i.e.*, leave for a few weeks or even hours at a time, Ms. Holley-Stokes would have structured her leave in a way in which she would not have had to resign for attendance issues.

22.     Although a global pandemic was in full swing, Temple University decided to withhold information from her that would have allowed her to better structure her leave and keep her job.

23.     Further, Temple University allowed white workers to work from home.  Ms. Holley-Stokes, however, as an African-American was not allowed to work from home.  If she were, she would not have had to resign from her job.

24.     Moreover, Temple University discriminated against her because she was a woman with children at home.  Temple University treated similarly-situated women without children in a different manner.  They were given certain accommodations that allowed them to work flexible schedules and keep their job.

## COUNT I
### Disability Discrimination in Violation of the ADA

25.     Defendant was at all times an employer with more than 15 employees and subject to the ADA.

26.     Plaintiff's perceived disability is recognized as a disability under the ADA.

27.     Plaintiff was otherwise qualified to perform the essential functions of her job with or without reasonable accommodation.

28.     Plaintiff informed Defendant's managers/supervisors of her children's serious medical condition.  And she also informed them of the need for medical treatment and/or other accommodations for them.

29.     Despite Plaintiff's children's health conditions and limitations, she was still able to perform the duties of her job with or without reasonable accommodation.

30.     Plaintiff requested reasonable accommodations to care for her children.

31.     Defendant's actions subjected Plaintiff to discrimination based on her actual and/or perceived disabilities and/or record of impairment, and retaliating against her for requesting a reasonable accommodation for Plaintiff's disabilities.

32.     Women that have children with disabilities are protected from discrimination under the ADA.  Temple University discriminated against Plaintiff because she had a child with a disability.

33.     Plaintiff was regarded as a woman with a disability.  Her manager called her bipolar.  It does not matter whether she had the disability or not.  She was still regarded as a woman with disabilities under the ADA.

34.     As a direct result of unlawful, discriminatory, and retaliatory employment practices in violation of the ADA of which Defendant engaged, Plaintiff sustained permanent and irreparable harm, resulting in termination from employment, which caused loss of earnings, plus the value of certain benefits, loss of future earning power, back pay, front pay and interests.

**COUNT II**
**FMLA Violations**

35.     Plaintiff incorporates by reference the foregoing paragraphs as if set forth herein in their entirety.

36.     Among the substantive rights granted by the FMLA to eligible employees is the right to 12 work weeks of leave during any 12-month period to care for a child with a serious health condition, 29 U.S.C. § 2612(a)(1)(c), and the right following leave to be restored by the employer to the position of employment held by the employee when the leave commenced or to an equivalent position.  29 U.S.C. § 2614(a)(1).

37.     The FMLA further prohibits discrimination or retaliation against an employee for exercising her FMLA rights or for opposing any practice made unlawful by the FMLA.  29 U.S.C. § 2615(a)(1).

38.     The actions of Defendant, in retaliating against Plaintiff for exercising her right to utilize FMLA, and interfering with her right to take FMLA leave, as described herein, constitutes a violation of the FMLA.

39.     Defendant also interfered with her right to take FMLA leave by not informing her that she could structure her leave requests in a way that would protect her job.

40.     Defendant's actions were willful, malicious, wanton, in bad faith and in reckless disregard of Plaintiff's rights.

41.     As a direct result of the willful, wanton, reckless, careless, and negligent acts of the Defendant, Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until the Court grants the relief requested.

**COUNT III**
**Title VII - Gender, Race, and Disability Discrimination**

**Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")**

**(Gender Discrimination; Retaliation; Hostile Work Environment)**

42.     Plaintiff incorporates by reference the foregoing paragraphs as if set forth herein in their entirety.

43.     By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant violated Title VII.

44.     Defendant acted intentionally and willingly, with malice and/or reckless indifference to Plaintiff's rights, warranting the imposition of punitive damages.

45.     As a direct and proximate result of Defendant's violations of Title VII, Plaintiff has suffered damages and losses and has incurred attorneys' fees and costs.

46.     Plaintiff is an African-American woman who was disparately treated in comparison to her white counterparts.

47.     Plaintiff was also discriminated against on the basis of "sex plus."  She was one of the only woman in her department with children.  She was discriminated against because she was a woman with child concern needs and there was a fear that she would miss time at work.

48.     Plaintiff suffered from an adverse employment action. In addition to being constructively discharged, she also was subject to retaliation in the form of a disciplinary action, which directly resulted from her being a black woman with child concerns who raised those concerns to management.

49.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until the Court grants the relief requested.

**PHRA - Gender, Race, and Disability discrimination**

50.     Plaintiff incorporates by reference the foregoing paragraphs as if set forth herein in their entirety.

51.     Plaintiff is and was at the time of her termination, an African-American female with bipolar disorder, and an individual within classes protected by the PHRA.

52.     In discriminating against and harassing Plaintiff because of Plaintiff's sex, race and/or disability, Defendant violated the PHRA[2].

53.     Defendant's violations were intentional and willful.

54.     As a direct and proximate result of Defendant's unlawful employment practices, Plaintiff suffered damages and has incurred attorney's fees and costs.

55.     Plaintiff's disability status, regarded as,  is recognized  under the PHRA. She was regarded as a woman with bipolar disorder. Further, she is protected because her child has a disability and she was discriminated against because of that.

56.     Plaintiff was otherwise qualified to perform the essential functions of her job with or without reasonable accommodation.

57.     Plaintiff informed Defendant's managers/supervisors of her children's serious medical condition.

58.     Despite Plaintiff's conditions and limitations, she was still able to perform the duties of her job with or without a reasonable accommodation.

59.     Plaintiff requested reasonable accommodation for her above-mentioned disability which Defendant refused to grant.

---

[2] Plaintiff brings her PHRA claim for notice purposes only.  She has yet to receive a right to sue letter from the PHRC.

60.     Defendant's actions subjected Plaintiff to discrimination based on her actual and/or perceived disabilities and/or record of impairment, and retaliating against her for requesting a reasonable accommodation for Plaintiff's disabilities.

61.     Plaintiff is an African-American woman who was disparately treated in comparison to her white counterparts.

62.     Plaintiff was also discriminated against on the basis of "sex plus."  She was one of the only woman in her department with children.  She was discriminated against because she was a woman with child concern needs and there was a fear that she would miss time at work.

63.     Plaintiff suffered from an adverse employment action. In addition to being constructively discharged, she also was subject to retaliation in the form of a disciplinary action, which directly resulted from her being a black woman with child concerns who raised those concerns to management.

64.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until the Court grants the relief requested.

65.     As a direct result of unlawful, discriminatory, and retaliatory employment practices in violation of the PHRA of which Defendant engaged, Plaintiff sustained permanent and irreparable harm, resulting in termination from employment, which caused loss of earnings, plus the value of certain benefits, loss of future earning power, back pay, front pay and interests.

### COUNT IV
### Constructive Discharge

66.     Plaintiff incorporates by reference the foregoing paragraphs as if set forth herein in their entirety.

67.     Plaintiff suffered the adverse action of constructive discharge.

68.     Plaintiff was denied benefits.  Defendant did not tell her that she could structure her leave in a way that would protect her job. As such, she did not use her full FMLA benefits to which she was entitled, which would have enabled her to keep her job.  She needed the leave to care for her children during the pandemic and arrange proper child care for them as well as work different or less hours.

69.     Further, because she was denied this benefit, she received disciplinary action for being late for the first time.   She received this action after receiving a promotion, which demonstrates that Defendant was urging her to resign.  She could not keep her job because she had to care for her child with special needs.  If she had been given intermittent leave, she could have done so.

70.     Her resignation is based off her not being able to secure FMLA leave.  She requested multiple LOAs and Defendant knew that she needed leave.

71.     A reasonable person would have resigned under such circumstances.  Defendant created an impossible situation where, because it did not follow the law, Plaintiff was not able to care for her child with special needs during a pandemic.  Any reasonable person would have resigned to take care of their child and avoid having a termination on their record.

72.     Further, she was threatened with discharge.  She was told that another disciplinary action would result in her termination.   And she knew that she had no way of not receiving disciplinary action based on her FMLA situation and her being denied leave.  As such, she was forced to resign.

**PRAYER FOR RELIEF**

_____WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendants' improper conduct, and specifically prays that the Court grant the following relief to Plaintiff by:

    a)  Declaring the acts and practices complained of herein to be in violation of Section 1983;

    b)  Enjoining and permanently retraining the violations alleged herein;

    c)  Entering judgment against the Defendant and in favor of the Plaintiff in an amount to be determined;

    d)  Awarding compensatory damages to make Plaintiff whole for all lost earnings, earning capacity and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendant's improper conduct;

    e)  Awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasure, which Plaintiff has suffered or may suffer as a result of Defendant's improper conduct;

    f)  Awarding punitive damages to Plaintiff;

    g)  Awarding Plaintiff such other damages as are appropriate under Title VII, Section 1983, the PHRA, and the PFPO;

    h)  Awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorney's fees; and,

    i)  Granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

Respectfully submitted

Dated: October 21, 2021

*/s/ Andrew Lacy, Jr.*
Andrew Lacy, Jr. Esq.
**THE LACY EMPLOYMENT
LAW FIRM LLC**
2514 W Seybert Street
Philadelphia, PA
(t) 412-301-3908
andrew.lacy@employment-labor-law
.com

*Counsel for Plaintiff*

# EXHIBIT 1

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act
Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | |

**Pennsylvania Human Relations Commission** and EEOC

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Ms. Tyera Jane Holley-Stokes** | **267-290-5878** | **March 22, 1989** |

| Street Address | City, State and ZIP Code |
|---|---|
| **4723 B 15th Street, FL 2 Philadelphia, PA** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **Temple University** | **6,000+** | |

| Street Address | City, State and ZIP Code |
|---|---|
| **2450 W Hunting Park Avenue, Philadelphia, PA 19189** | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☒ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☒ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **12/2019**   Latest **10/14/2020**
☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

Ms. Holley-Stokes is an African-American female. During her time at Temple University, Ms. Holley-Stokes was treated differently from white coworkers as well as male and female coworkers without children.

During her time at Temple, Ms. Holley-Stokes was regarded as having bipolar disorder. Her supervisor, Kathleen Haviland, a white female, called her "bipolar" in a meeting in December 2019. She was the same manager who subjected Ms. Holley-Stokes to continued discrimination, harassment, and retaliation.

During the pandemic, Ms. Holley-Stokes lacked childcare for her son Tyree. He needed daily treatment for Asthma and was at high risk during the Covid-19 pandemic. She requested leaves of absences (LOA) to take care of her son. She first requested a leave of absence from April 7-June 5, 2020. Ms. Stokes' request for LOA was approved for April 7, 2020-April 13,2020, but denied from April 14-June 5, 2020. During the LOA time frame that Temple approved, Ms. Holley-Stokes was quarantining after exposure to someone with a positive Covid-19 contraction.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 4/13/2021 — *DocuSigned by:* Tyera Holley-Stokes — ED9FF3C8855B440... <br> *Date* — *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act
Statement and other information before completing this form.

Charge Presented To:     Agency(ies) Charge No(s):

[ ] FEPA

[X] EEOC

**Pennsylvania Human Relations Commission**     and EEOC

*State or local Agency, if any*

THE PARTICULARS ARE (*If additional paper is needed, attach extra sheet(s)):*

Ms. Stokes, after returning from isolation, again requested LOA to care for her son. During the middle of May, 2020, Tyree began to have asthma flair ups. At this time, Tyree required daily administration of his asthma medication from an adult. Ms. Holley-Stokes again asked about receiving a LOA, and again, she heard nothing from management.

She asked for several other accommodations. She asked for working earlier hours, half days, and remote work. Other employees in that department were allowed to work from home during the pandemic. In addition, the female coworkers who were allowed to work from home did not have small children, like Ms. Stokes. Finally, Ms. Holley-Stokes applied for and received two weeks of FMLA care.

After she returned to work, Ms. Holley-Stokes again requested a LOA. Starting in August that year, she would send multiple requests to her supervisors. They would read the requests and not respond.

On September 15, 2020, Ms. Holley-Stokes received a corrective action notice for the months of March, April, May, June, and July for attendance. Ms. Holley-Stokes worked as a Medical Records Clerk in the Appeals Department.

In July 2020, Ms. Holley-Stokes was promoted to PreCert Dept. Yet she received backdated corrective actions after she persisted in requesting accommodations/LOAs. Ms. Stokes' union representative then informed Ms. Holley-Stokes that if she had another attendance issue or lateness, she would be suspended or terminated.

Fearing for her job, and that this was the only choice in the face of retaliation, Ms. Holley-Stokes resigned. She felt that she had no choice given that her managers refused to accommodate her requests for reasonable accommodations, FMLA, and LOAs. And she feared that she could not care for her child with a qualified disability.

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 08/10/2021 _____     _____ <br><br> *Date*               *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (*month, day, year*) |

EEOC Form 161 (11/2020)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

---

## DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To:  **Tyera Jane Holley-Stokes**<br>     **4723 N 15th Street, Fl 2**<br>     **Philadelphia, PA 19141** | From:  **Philadelphia District Office**<br>        **801 Market Street**<br>        **Suite 1000**<br>        **Philadelphia, PA 19107** |

|   | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR §1601.7(a))* |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **530-2021-02875** | **Legal Unit,**<br>**Legal Technician** | **(267) 589-9707** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

|   |   |
|---|---|
| [ ] | The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC. |
| [ ] | Your allegations did not involve a disability as defined by the Americans With Disabilities Act. |
| [ ] | The Respondent employs less than the required number of employees or is not otherwise covered by the statutes. |
| [ ] | Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge |
| [X] | The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge. |
| [ ] | The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge. |
| [ ] | Other *(briefly state)* |

### - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

On behalf of the Commission

*Dana R. Hutter* (signature)

08/13/2021

Enclosures(s)

**Dana R. Hutter,**
**Deputy Director**

*(Date Issued)*

cc:

**TEMPLE UNIVERSITY HEALTH SYSTEM**
**2450 W. Hunting Park Avenue**
**Philadelphia, PA 19129**

Andrew Lacy, Jr.
**THE LACY EMPLOYMENT LAW FIRM**
**2514 W Seybert Street**
**Philadelphia, PA 19121**

Enclosure with EEOC
Form 161 (11/2020)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS  --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA),
the Genetic Information Nondiscrimination Act (GINA), or the Age
Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within
90 days of the date you *receive* this Notice**.  Therefore, you should **keep a record of this date**.  Once this 90-
day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to
consult an attorney, you should do so promptly.  Give your attorney a copy of this Notice, and its envelope or
record of receipt, and tell him or her the date you received it.  Furthermore, in order to avoid any question that you
did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was
*issued* to you** (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate
State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide
after talking to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short
statement of the facts of your case which shows that you are entitled to relief.  Your suit may include any matter
alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in
the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some
cases can be brought where relevant employment records are kept, where the employment would have been, or
where the respondent has its main office.  If you have simple questions, you usually can get answers from the
office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or
make legal strategy decisions for you.

## PRIVATE SUIT RIGHTS  --   Equal Pay Act (EPA):

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back
pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible.  For
example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit
<u>before 7/1/10</u> – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA
suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.
Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA
claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

## ATTORNEY REPRESENTATION   --   Title VII, the ADA or GINA:

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction
in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be
made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your
efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above,
because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

## ATTORNEY REFERRAL AND EEOC ASSISTANCE   --   All Statutes:

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any
questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to
inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide
your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files
are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge
file, **please make your review request <u>within 6 months</u> of this Notice**.  (Before filing suit, any request should be
made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

Enclosures(s)

cc:  **Anna Oppenheim**
**TEMPLE UNIVERSITY OFFICE OF UNIVERSITY**
**COUNSEL**
**300 Sullivan Hall**
**1330 West Polett Walk**
**Philadelphia, PA 19122**

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):**   The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability.  *However, these terms are redefined, and it is easier to be covered under the new law.*

**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

➢ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.
➢ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)),  **"major life activities"  now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system**.**
➢ **Only one** major life activity need be substantially limited.
➢ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
➢ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.
➢ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage:**
➢ An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).
➢ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
➢ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.
➢ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note:   Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment.  Beyond the initial pleading stage, some courts will require specific evidence to establish disability.*   For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.